OPINION OF THE COURT
Jones, J.
A commitment fee paid by a developer to a lender to reserve funds for future mortgage loans to individual home *44 owners is not to be considered any part of the interest paid by the mortgagor for purposes of applying the usury statute.
The Attorney-General’s complaint alleges that in May, 1973 Central Federal Savings and Loan Association of Nassau County agreed with the sponsor-developer of a condominium housing project to reserve $7,500,000 from which to make future purchase-money mortgage loans to individuals to finance the acquisition of condominium units in the project. The developer paid Central Federal a fee of $150,000 for this commitment. Thereafter, it is alleged, Central Federal provided the contemplated financing to approximately 66 individual borrowers to enable them to purchase condominium units. These loans were evidenced by bonds and mortgages providing for interest at 8.5% per annum. Asserting that the maximum interest rate which could be charged by Central Federal was 8.5%, the Attorney-General contends that the $150,000 commitment fee paid to Central Federal in addition to the 8.5% interest due on the 66 loans rendered each of the loans usurious as in excess of the maximum interest rate permitted by law and regulation. There follows an allegation that these acts and practices constituted repeated illegal acts in the transaction of business within the meaning of subdivision 12 of section 63 of the Executive Law. The complaint prays for injunctive relief, repayment to the individual borrowers of amounts two times the amount of interest already paid as usurious interest in excess of that permitted by law and regulation, and an allowance for costs pursuant to CPLR 8303 (subd [a], par 6).
Motions were made to dismiss the complaint on the ground that the Attorney-General did not have standing to bring the action and that the complaint failed to state a cause of action. The Attorney-General had moved for a preliminary injunction. Affidavits were submitted in support of and in opposition to the motions. Special Term granted the motions to dismiss the complaint for failure to state a cause of action on the ground that it did not allege persistent or repeated fraud or illegality within subdivision 12 of section 63 of the Executive Law. The court accordingly denied the cross motion for a preliminary injunction. Special Term expressly declined to pass on the other grounds urged for dismissal. The Appellate Division affirmed, without opinion, and we granted leave to appeal. We now affirm the dispositions below but on a different ground from that relied on at Special Term. We conclude *45 that the commitment fee paid by the developer is not to be taken into account in computing interest, and accordingly that the loans were not usurious.
The Attorney-General relies on the provisions of section 14-a of the Banking Law and subdivision (a) of section 4.2 and section 4.3 of the Banking Board Regulations (3 NYCRR 4.2 [a], 4.3). Section 14-a of the Banking Law provided in pertinent part:
"§ 14-a. Power of the. banking board to prescribe rate of interest
"1. It is hereby declared to be the policy of the state of New York that for the period ending September first, nineteen hundred seventy-one* the rate of interest provided in section 5-501 of the general obligations law shall be adjusted by the banking board in response to changed economic conditions in such manner as to insure the availability of credit at reasonable rates to the people of the state while affording a competitive return to persons extending such credit.
"2. (a) For the purpose of effectuating the policy declared in subdivision one of this section, the banking board shall have power prior to September first, nineteen hundred seventy-one* by a three-fifths vote of all its members:
* * *
“(2) To adopt such other regulations as it shall deem necessary or proper to implement the provisions of this section.
"(b) The rate of interest prescribed by the banking board pursuant to paragraph (a) of this subdivision shall be based on prevailing economic conditions including, in particular, yields on conventional home mortgages throughout the United States and on corporate interest-bearing securities of high quality, and shall include as interest any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance as defined by the banking board pursuant to subparagraph two of paragraph (a) of this subdivision.”
The Banking Board Regulations insofar as pertinent provided:
"4.2 Amounts included as interest. The term 'interest’ as used in section 4.1 of this Part:
"(a) when applied to any loan or forbearance secured pri *46 marily by an interest in real property improved by a one or two family residence occupied by the owner, shall include origination fees, points and other discounts and all other amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance. The fees, charges and costs described in section 4.3 of this Part do not constitute amounts paid or payable, directly or indirectly, to or for the account of the lender in consideration for making the loan or forbearance and are not included in 'interest’ * * *
"4.3 Amounts not included as interest in certain home mortgage loans. The term 'interest’ for purposes of subdivision (a) of section 4.2 of this Part shall not include the following amounts payable in connection with the loan or forbearance, if itemized in writing to the borrower:
"(a) a reasonable fee in consideration for the legally enforceable written commitment of the lender to reserve funds for future disbursement to the borrower, provided such commitment was made prior to November 1, 1968”. (3 NYCRR 4.2 [a], 4.3.)
Based on these provisions of statute and regulation, it is asserted that the commitment fee of $150,000 paid by the developer must be added when interest on the individual loans is computed, and, inasmuch as the direct interest rate on the individual mortgages was at the ceiling, this indirect supplemental payment made the loans usurious. The critical issue is whether the $150,000 commitment fee must indeed be included in computation of interest on the individual loans. It is the position of the Attorney-General, which is not disputed by defendants, that the Legislature in section 14-a of the Banking Law delegated responsibility for defining what is and what is not interest to the banking board. Defendants, however, challenge the Attorney-General’s conclusion that the commitment fee is interest within the definitions promulgated by the banking board. We agree with defendants.
Analysis of subdivision (a) of section 4.2 of the regulations discloses that the inclusive series of differently labeled payments embraced within its prescription — "origination fees, points and other discounts and all other amounts paid or payable, directly or indirectly” — qualify as "interest” only if paid "to or for the account of the lender in consideration for making the loan or forbearance” (emphasis added). This latter limitation is precisely the same as that set forth in the *47 description of payments to be included in determining interest in section 14-a (subd 2, par [b]) of the Banking Law — "any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance” (emphasis again added). In the present case the commitment fee was not paid by the developer in consideration for making the loans to the individual purchasers of condominium units; it was paid in consideration of Central Federal’s keeping $7,500,000 on reserve during the period anterior to the making of the individual loans, to be available when funds were needed for such loans. Central Federal was entitled to the commitment fee if the stipulated reserve was maintained, whether or not any loan was ever made to an individual purchaser (Fort M Dev. Corp. v Inland Credit Corp., 54 AD2d 862, affd on mem at App Div 43 NY2d 763; cf. Boston Rd. Shopping Center v Teachers Ins. & Annuity Assn. of Amer., 13 AD2d 106, affd without opn 11 NY2d 831).
This analysis conforms to the economic realities of the transactions. While not wholly unrelated, the reserve arrangement obtained by the developer from Central Federal was discrete and separate in time and function from the later loans to the individual purchasers. The developer required an advance assurance of the future availability of mortgage financing to meet a condition precedent to its obtaining a loan from a third party for land acquisition and development, and that is what it paid for. (Compare Bevier v Coveil, 87 NY 50, in which this court recognized the distinction between a payment made to keep funds available prior to the making of a loan and interest paid at the ceiling rate after the mortgage closed.) To merge the commitment transaction with the developer and the loans to individual purchasers is to ignore the realities of the situation. Indeed, if there were to be any "tacking” of these separate transactions the payment of the commitment fee would have to be related to the period during which Central Federal kept the funds on reserve. Inasmuch as the record discloses no individual loans closed within a year after the May, 1973 commitment, a $150,000 payment to hold $7,500,000 would represent an "interest rate” of less than 2% per annum, paid with respect to a period prior to closing the individual loans — thus presenting permissible sequential payments, first by the developer for the availability of money and later by the individual purchasers for the use of money, as *48 distinguished from an impermissible cumulative payment for the use of money as characterized by the Attorney-General.
The scope of applicability of subdivision (a) of section 4.2 of the regulations (3 NYCRR 4.2 [a]) is illustrated in the present case by reference to the advance mortgage commitment letters given by Central Federal to the individual borrowers, for which no fee was charged or received. Any fee paid for such individual mortgage commitments, whether paid by the developer or the borrower, would indeed have come within the embrace of the regulation as being "in consideration for making the loan”. But there was none.
It remains to observe additionally that the provisions of subdivision (a) of section 4.3 of the regulations do not provide any support for the position urged by the Attorney-General, even by way of negative implication. The provisions of section 4.3 serve to identify payments which it was the intention of the banking board to exclude from what would otherwise have been the inclusiveness of subdivision (a) of section 4.2 — thus, "[t]he term 'interest’ for purposes of subdivision (a) of section 4.2 of this Part shall not include the following payments in connection with the loan”. If the particular payment never came within the embrace of subdivision (a) of section 4.2 in the first place (as we hold to be the case with respect to the $150,000 reserve commitment paid by the developer because it was not in consideration for making the later loans to purchasers) it is immaterial to consider whether it falls within a defined exclusion. In this instance the scope of inclusion is not enlarged because it is diminished by specified exclusions.
We therefore conclude that the $150,000 commitment fee paid by the developer for reservation of funds to be available for future loans to individual purchasers is not to be deemed a component of interest on the eventual loans to the purchasers. In view of this conclusion it is unnecessary to reach or consider the other contentions tendered by the parties.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 Successively extended to present expiration date of May 1,1979.